IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KING OF PRUSSIA DENTAL ASSOCIATES, LTD., <br><br> Plaintiff, <br><br> v. <br><br> KING OF PRUSSIA DENTAL CARE, LLC[1] <br><br> Defendant. | CIVIL ACTION <br> NO. 19-1688 |

## OPINION

**Slomsky, J.**                                                                 **May 23, 2019**

## I.    INTRODUCTION

This case arises from Defendant's attempt to open a dental practice in King of Prussia, Pennsylvania under the name KOP Dental Care, LLC. Since at least 1985, Plaintiff King of Prussia Dental Associates, Ltd. ("Plaintiff") has continuously maintained a dental practice on Allendale Road in King of Prussia. During that time, Plaintiff claims that it came to be known as either King of Prussia Dental or KOP Dental. In recent months, however, a competing dental practice leased office space on West Dekalb Pike in King of Prussia, seeking to use a name similar to that of Plaintiff. Although the competing dental practice—Defendant KOP Dental Care, LLC ("Defendant") has not yet opened its doors, it has already erected a sign outside its offices, which reads "KOP Dental." (Doc. Nos. 1, 12.)

On April 18, 2019, Plaintiff initiated the present action by filing the Verified Complaint against Defendant, alleging violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),

---

[1]    Defendant has represented that this case is incorrectly captioned. Defendant is named KOP Dental Care, LLC, not King of Prussia Dental Care, LLC. (See Doc. No. 13.)

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(4), and Pennsylvania common law claims for trademark service mark infringement and unfair competition. (Doc. No. 1.) That same day, Plaintiff filed a Motion for a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65, asking the Court to temporarily enjoin Defendant from using the name "KOP Dental Care." (Doc. No. 2.) On April 22, 2019, after holding a telephone conference on the record with representatives of the parties, the Court granted Plaintiff's Motion and entered a Temporary Restraining Order ("TRO"), which temporarily prevented Defendant from "advertising, soliciting, marketing, or otherwise using the KOP Dental or KOP Dental Care service mark in connection with the provision of dental care." (Doc. No. 4.)

On May 3, 2019, the Court held a hearing to decide whether to convert the TRO into a Preliminary Injunction. At the hearing, the Court heard testimony from two witnesses: (1) Eileen Blefeld, Plaintiff's Treasurer and Office Manager, and (2) M. Alexandre Cho, D.M.D., one of Defendant's partners. (See Doc. No. 11.) After the hearing, with the consent of both parties, the Court entered an Order, which extended the TRO until May 21, 2019. (Doc. No. 9.) On May 14, 2019, in accordance with the direction of the Court, the parties filed briefs on the issue of whether the Court should enter a Preliminary Injunction enjoining Defendant from using the name KOP Dental Care until this case is decided on the merits. (Doc. Nos. 12, 13.) Upon consideration of the testimony and exhibits offered by the parties at the hearing held on May 3, 2019, and the parties' filings and arguments in this case, the Court will deny Plaintiff's Motion for a Preliminary Injunction.

## II.    FINDINGS OF FACT

Plaintiff King of Prussia Dental Associates ("Plaintiff") is a professional corporation located at 491 Allendale Road in King of Prussia, Pennsylvania. Plaintiff has continuously offered

general and cosmetic dental services to the public at that location since 1985.[2]  (Doc. No. 1 ¶ 1; Doc. No. 12 at 1.)  Plaintiff claims that from the day it opened its doors in 1985, it has been known as King of Prussia Dental or KOP Dental in the King of Prussia community.  (See Doc. Nos. 1, 2, 12.)  Notably, the town of King of Prussia, Pennsylvania, is often known as "KOP."

Plaintiff maintains two internet domain names for its practice:  (1) https://www.kingofprussiadental.com, and (2) https://www.KOPDental.com.  Both domain names lead to the same website, which advertises and provides information about Plaintiff's services.  (Doc. No. 12 at 1-2.)  Additionally, all of Plaintiff's employees have employee email addresses that end with @KOPDental.com.  (See Hrg. Ex. 5.)  Plaintiff also maintains an active social media presence using the name KOP Dental.  For example, Plaintiff can be found on Facebook at Facebook.com/KOPDental; it can be found on twitter at twitter.com/KOP_Dental or @KOPDental; it can be found on Google Plus at Plus.Google.com/KOPDental; and it can be found on Tumblr at KOPdental.tumblr.com.  (Doc. No. 12-1 at 2.)  Plaintiff's twitter account, which has been active since 2015, only has fifty-one (51) followers.  However, Plaintiff claims that thousands of people follow Plaintiff's Facebook account, which has been operative since 2008.  (Doc. No. 11 at 11:17-13-7; 26:19-25.)

To promote its services, Plaintiff spends over $100,000 per year on advertising marketing materials, including new resident mailers, items like pens and calendars, social media and Google advertising, and sponsorships of local sports teams.  In contrast to Plaintiff's internet presence, all

---

[2]  Although Plaintiff's Memorandum in Support of its Motion for a Preliminary Injunction states that Plaintiff has been in operation since 1985, allegations in the Verified Complaint contradict that statement.  In the Verified Complaint, Plaintiff states that it "has been in continuous operation at its location on Allendale Road in King of Prussia since 1973."  (Doc. No. 1 ¶ 5.)  In the Verified Complaint, Plaintiff also alleges that it registered the name King of Prussia Dental Associates with the Pennsylvania Corporation Bureau on September 17, 1985.  (Id. ¶ 1.)

of Plaintiff's print marketing materials bear the name King of Prussia Dental Associates or the name King of Prussia Dental. (Doc. No. 12 at 1-2.) But neither the print marketing materials nor the marketing materials distributed to patients—i.e., pens, calendars, frisbees—bear the name KOP Dental. (Doc. No. 11 at 26:15-18.) At this point in the proceedings, it is unclear how Plaintiff's $100,000 budget is allocated—that is, it is unclear how much money Plaintiff spends on marketing materials that bear the name King of Prussia Dental Associates or the name King of Prussia Dental, and how much money is spent creating materials or online content using the term KOP Dental. Significantly, prior to the start of this case, Plaintiff had not yet registered the names "King of Prussia Dental Associates," "King of Prussia Dental," or "KOP Dental" with the United States Patent and Trademark Office.[3]

In recent months, Plaintiff learned that another dental practice—Defendant KOP Dental Care ("Defendant")—had leased office space at 600 West Dekalb Pike in King of Prussia. (Doc. No. 12 at 3.) Plaintiff discovered this information when some of its employees drove past Defendant's practice on their way to work and saw a sign that read "KOP Dental." (Doc. No. 1 ¶ 21.) Soon thereafter, on March 23, 2019, Plaintiff's counsel sent Defendant a cease and desist letter, which read as follows:

> It has come to our attention that you intend to open a dental office under the name KOP Dental Care or King of Prussia Dental Care at 600 W. Dekalb Pike and Allendale Road, King of Prussia, PA. The practice that is opening at that location has a sign on the building saying KOP Dental.
>
> My client has developed and acquired goodwill and related intellectual property rights related to the name King of Prussia Dental or KOP Dental within this geographic area. It has operated under that trade name at its location since 1973.

---

[3] At the hearing on May 3, 2019, Plaintiff introduced five exhibits into evidence. Exhibit 2, which was admitted into evidence, is Plaintiff's application filed with the U.S. Patent and Trademark Office to trademark the service mark "KOP Dental." (Hrg. Ex. 2.) The application, which was filed on April 23, 2019, states that "the mark was first used by the applicant . . . as early as 12/31/85, and is now in use in such commerce." (Id.)

It expends over a hundred thousand dollars a year in print and other advertising and marking materials, new resident mailers, and sponsorship of local sports teams using this name. The name King of Prussia Dental Associates has been registered with the Pennsylvania corporation bureau since December 22, 1975. It has an internet domain name for King of Prussia Dental, https://www.kingofprussiadental.com and https://www.KOPDental.com and it has developed a highly positive and favorable patient and referral network using this name.

Your contemplated use of the name – King of Prussia Dental Care or KOP Dental – also located on Allendale Road in King of Prussia, undoubtedly will cause confusion among patients, other health providers, vendors, and the general public. Already my client has fielded telephone inquiries as to whether the two entities are one and the same. Your contemplated use of this obviously confusingly similar name and mark constitutes a violation of my client's rights under federal law and Pennsylvania common law regarding service marks and unfair competition.

Accordingly, you are hereby advised to cease any operations, advertising or marketing under the name KOP Dental or King of Prussia Dental Care or any derivation thereof. If you fail to comply with this request, my client shall file an appropriate action against you in court and seek injunctive relief, damages and an award of its attorney's fees.

(Doc. No. 1 at 30.) In response to the cease and desist letter, Defendant's accountant[4] emailed Plaintiff's counsel to inform him that Defendant planned to move forward under the name KOP Dental Care. (Id. at 32-33.)

On April 18, 2019, Plaintiff initiated the present action by filing the Verified Complaint pursuant to Section 43 of the Lanham Act, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and Pennsylvania common law claims for trademark infringement and unfair competition. (Id.) That same day, Plaintiff filed a Motion for a Temporary Restraining Order, asking the Court to temporarily enjoin Defendant from using either the name KOP Dental or the name KOP Dental Care.[5] (Doc. No. 3.) As noted, on April 22, 2019, after holding a telephone

---

[4]  Defendant had not yet retained counsel at that time.

[5]  At that point in the proceedings, it was unclear whether Defendant, whose registered name is KOP Dental Care, LLC, intended to use both KOP Dental Care and KOP Dental.

conference on the record with representatives of the parties, the Court granted Plaintiff's Motion and entered a Temporary Restraining Order ("TRO") that temporarily prevented Defendant from "advertising, soliciting, marketing, or otherwise using the KOP Dental or KOP Dental Care service mark in connection with the provision of dental care." (Doc. No. 4.)

On May 3, 2019, the Court held a hearing to decide whether to convert the TRO into a Preliminary Injunction. At the hearing, the Court heard testimony from the two witnesses: (1) Eileen Blefeld; and (2) M. Alexandre Cho, D.M.D. The Court first heard from Ms. Blefeld, Plaintiff's Treasurer and Office Manager, who testified that she and other employees have long referred to the practice as KOP Dental. (Doc. No. 11 at 13:1-14.) She stated the following:

| Plaintiff's Counsel: | Does your practice ever refer to itself as KOP Dental? |
|---|---|
| Ms. Blefeld: | Yes. |
| Plaintiff's Counsel: | And can you give me some for instances? |
| Ms. Blefeld: | Well, all of our patients refer to us as KOP Dental and they refer people to us and when they talk about us. When they've put in reviews in our Google reviews, they put KOP Dental in a lot of cases. And anything anybody does around the area, everybody says KOP. So we've always been known as KOP dental. |

(Id. at 13:5-14.)

Ms. Blefeld also testified that Plaintiff promotes the use of the mark KOP Dental on its social media accounts. For example, she told the Court that Plaintiff has used the hashtag #KOPDental in its Facebook posts since 2015:

| Defense Counsel: | Okay, and how far back does use of the #KOPDental on Facebook go? |
|---|---|
| Ms. Blefeld: | Probably 2015. |
| Defense Counsel: | Do you have any proof of that, evidentiary proof besides your testimony? |

| | |
|---|---|
| Ms. Blefeld: | I'm not sure. |
| Defense Counsel: | Okay, who are your social media followers? |
| Ms. Blefeld: | Many of them are patients. |
| Defense Counsel: | Okay. |
| Ms. Blefeld: | Or friends. |
| Defense Counsel: | Probably, would you agree, that the general public doesn't see your Facebook posts? It's more of your existing patients and friends, family? |
| Ms. Blefeld: | Not necessarily, because the way Facebook works, if they share our posts, which they do, it means that all of their other friends see it. |
| Defense Counsel: | Okay, but you're not sure who sees your posts? |
| Ms. Blefeld: | Well, I know that sometimes in response to our posts, we can see how many people it was shared with and sometimes they're in the thousands. |

(Doc. No. 11 at 27:7-28:1.)

As further evidence of Plaintiff's affiliation with the mark KOP Dental, Plaintiff moved into evidence a copy of a single online Google review from one of Plaintiff's patients, which reads as follows:

> I've been going to KOP dental for the past 15 years. I can honestly say I've never had one bad experience from checkups, cleanings, night guards and cosmetic. I've had my teeth cleaned from all of the hygienist [sic] and they are all . . . .

(Hrg. Ex. 4.)

On the subject of patient reviews, Ms. Blefeld told the Court that Plaintiff worried that the name of Defendant's practice—KOP Dental Care—would confuse patients writing online reviews who referred to Plaintiff's practice as KOP Dental. In relevant part, she testified as follows:

| | |
|---|---|
| Ms. Blefeld: | . . . We have very good ratings when you do a Google search. And all our reviews are pretty much five-star reviews. And if people assume that we are the other office, and they go there, and they get certain work done, and then they put out a review, we don't know who that review's going towards. We don't – I don't know what kind of dentistry they practice. We know what kind we practice. |

(Id. at 17:15-21.)

Ms. Blefeld also testified that Plaintiff was concerned that the similarity between the names of the practices would lead to the inadvertent disclosure of confidential medical and financial records. As noted above, all of Plaintiff's employees have work email addresses that end in @KOPDental.com. (See Hrg. Exh. 5.) In the normal course of work, Plaintiff's employees often use these email addresses to send and receive patient medical records, billing information, and referrals. At the hearing, Ms. Blefeld told the Court that she worried that due to the similarity of Plaintiff's and Defendant's practice names, individuals might inadvertently email information to one practice that was meant for the other practice, thus leading to violations of state and federal privacy laws. (Id. at 14:2-15:17; 16:11-22.)

Ms. Blefeld did not merely testify about the possibility of confusion between the two practices; she also testified that actual confusion had already begun. Specifically, she told the Court that after Defendant erected the sign which reads "KOP Dental," Plaintiff had received two inquiries, asking whether it had moved offices or opened another location:

| | |
|---|---|
| Ms. Blefeld: | . . . And it's troublesome. It's – people were already getting mixed up and calling us when they saw the sign that did we move. |
| Plaintiff's Counsel: | Can you state specifically who it was or what practice raised the question as to whether you would move? |
| Ms. Blefeld: | The oral surgery practice. |
| Plaintiff's Counsel: | And do you know what that [sic] what their call was about? |

| | |
|---|---|
| Ms. Blefeld: | She just called and said I saw the sign, did you guys move? And we said no.  And she said, oh, I was worried for a second. |
| | And so we cleared it up with them, but I had a patient in the next chair from me that also said I thought you may have moved that was talking to the hygienist. And I was working on a patient.  We have open rooms, so I could hear their conversation. |

(Id. at 16:20-17:9.)  Additionally, in early May, Plaintiff received a package in the mail that was meant for Defendant.  (Doc. No. 12-1 at 4.)  The original address on the package was KOP Dental Care, 600 W Dekalb Pike, Ste. 302, King of Prussia, Pennsylvania, PA 19406—the site of Defendant's new offices.  (Id.)  However, the postal service determined that the package had been sent to a "bad address," and instead sent the package to a "corrected address"—KOP Dental Care, 491 Allendale Road, Ste 306, King of Prussia, PA 19406.  (Id.)  As noted previously, this address is the location of Plaintiff's dental practice.

On cross-examination, Ms. Blefeld admitted that many businesses and organizations in King of Prussia, Pennsylvania, use the town's name:

| | |
|---|---|
| Defense Counsel: | Okay.  King of Prussia in King of Prussia Dental Associates means the town of King of Prussia; is that correct? |
| Ms. Blefeld: | Yes. |
| Defense Counsel: | Okay, and KOP in KOP Dental means the town of King of Prussia as well? |
| Ms. Blefeld: | Yes. |
| Defense Counsel: | Okay, so these marks are descriptive in the sense that they describe where you are located? |
| Ms. Blefeld: | Yes. |
| Defense Counsel: | And there are numerous businesses in King of Prussia that use the mark King of Prussia, correct? |

| | |
|---|---|
| Ms. Blefeld: | Probably, I guess so. |
| Defense Counsel: | King of Prussia Mall, for example? |
| Ms. Blefeld: | Sure. |
| Defense Counsel: | King of Prussia, is it KOP Town Center, is that the new – the King of Prussia Town Center? |
| Ms. Blefeld: | The new center, yes. |

(Doc. No. 11 at 28:2-21.)  Still, at the conclusion of her testimony, Ms. Blefeld told the Court that Plaintiff took the position that no other dental practice in the area should be permitted to use the terms "King of Prussia" or "KOP" in its name.  (Id. at 37:23-38:1.)

The Court also heard testimony from M. Alexandre Cho, D.M.D., a partner at Defendant KOP Dental Care, LLC.  According to Dr. Cho, the limited liability company that owns Defendant has three other dental offices in the Philadelphia region.  Each practice bears the name of the town or borough in which the office is located.  For example, the company operates a dental office in Abington, Pennsylvania, under the name Abington Dental Care, LLC.  (Doc. No. 11 at 42:6-43-24.)

At the hearing, Dr. Cho testified that he investigated other dental practices in King of Prussia, but did not find a practice operating under the name KOP Dental Care.  He also testified as to why Defendant wants to use the term King of Prussia or KOP in the name of its dental practice:

| | |
|---|---|
| Defense Counsel: | Okay, and before you picked the name KOP Dental Care for this new practice, had you investigated what dental practices were existing in King of Prussia? |
| Dr. Cho: | We have seen the King of Prussia Dental Associates.  And we had not seen any other practices practicing under [the] name KOP Dental Care. |

| | |
|---|---|
| Defense Counsel: | Okay, did you see any use of KOP Dental by King of Prussia Dental Associates prior to receiving, you know, this lawsuit? |
| Dr. Cho: | Not to my knowledge. |
| Defense Counsel: | Is there some reason that you think it is important to include the town name in the dental practice name? |
| Dr. Cho: | Yes, the – as a brand new business, it is, I believe, important for us to communicate with the public where we are located. |
| | And if we do – I mean, having the – communicate with the public – general public where we are located, I think it's the most essential for exact – especially for [a] brand new business and also to have it consistent with our rest of the – our practices we have together. |

(Id. at 42:20-43:15.)  To that end, Dr. Cho testified that it is common to include the name of the location of a dental or medical practice in the practice's name.  He further explained this concept by testifying about Abington Dental Care:

| | |
|---|---|
| Defense Counsel: | Okay, are you familiar with other dentists in other towns around southeastern Pennsylvania, the Philadelphia area? |
| Dr. Cho: | Let me just give an example for our own practice in Abington.  We have a[n] office that has been established ever since 1940.  And we are opened as a[n] Abington Dental Care. |
| | Recently about [a] few years down the line, about two blocks on the same Old York Road on the Abington Hospital, we have a[n] office opened up under [the] name Abington Dental Associates.  And the other side of it also opened up as Abington Dental – Abington Dental Smile. |
| | And these practices, which opened after we did, there has not been that many confusions along with it.  And also, if there was any, what we do is we do redirect the patients to their own wish of their – an office they're looking for. |

(Id. at 43:15-44:3.)  Significantly, Dr. Cho conceded that some patients were confused by the similarity of the names Abington Dental Care, Abington Dental Associates, and Abington Smile Dental.

Still, Dr. Cho testified that the similarity between the names of Plaintiff's practice and Defendant's practice would not cause Plaintiff to lose patients.  According to Dr. Cho, most people search for the name of a dentist, not the name of a dental practice:

| | |
|---|---|
| Defense Counsel: | Is there anything about the nature of a dental practice that makes confusion in your opinion less likely, even dental practices are operating with similar names? |
| Dr. Cho: | With my experience in dentistry in 25 years, no, not really, because dental practice in my opinion . . . really has to do with the relationship between doctor and the patients. |
| | So when a patient's looking for a doctor or a dental practice, it's not about the – looking at the name maybe at the beginning, because they are looking for a dental home. |
| | And when they're going into the dental home, if it's not their own doctor, they're just [going to] turn around and go to the right places.  Anyway, that's how I see it and that's how I practice. |
| | We try to build the relationship between patient and dentist, rather than the – our name itself.  Name is really to, in my opinion, it's only letters and locations.  It's really about our doctors who's creating the business.  So I don't know if I answered your question. |
| Defense Counsel: | Okay, when you get – when a – if you know, when you receive a referral, is that referral generally to your dental practice or to you as to the dentist? |
| Dr. Cho: | As I am referring my patients to other practices, it's always under the name of the doctor, not only the business name of it. |
| Defense Counsel: | Okay. |

| Dr. Cho: | I have a long and – long history of having a relationship with many other specialists.  I myself am a specialist as well, too. |
|---|---|
| | And when we get – when I get the referral, I get refer[red] [a] patient to my name rather than the practice's name.  So I hope that answered your question. |

(Id. at 45:15-46:20.)

Additionally, Dr. Cho confirmed that although the name of Defendant's practice is KOP Dental Care, the sign outside Defendant's office on West Dekalb Pike reads "KOP Dental."  (Id. at 49.)  At the hearing, counsel for Defendant told the Court that Defendant seeks to use both KOP Dental Care and KOP Dental.  (Id. at 49:14-15.)  However, in Defendant's Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction, which was filed on May 14, 2019, Defendant informed the Court that it does not seek to use the name KOP Dental; it only seeks to use the name KOP Dental Care.  (Doc. No. 13 at 3-4.)

## III.   STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy and "should be granted only in limited circumstances."  Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994).  When evaluating a motion for preliminary injunctive relief, a court considers four factors:

> (1) has the moving party established a reasonable likelihood of success on the merits (which need not be more likely than not); (2) is the movant more likely than not to suffer irreparable harm in the absence of preliminary relief; (3) does the balance of the equities tip in its favor; and (4) is an injunction in the public interest?

Fulton v. City of Philadelphia, No. 18-2574, 2019 WL 17583355, at *6 (3d Cir. Apr. 22, 2019) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  If the first two "gateway factors" are satisfied, "a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.  Reilly v. City of Philadelphia, 858 F.3d 173, 179 (3d Cir. 2017).  "All four factors should

favor preliminary relief before the injunction will issue." <u>Alliance Bank v. New Century Bank</u>, 742 F. Supp. 2d 532, 545 (E.D. Pa. 2010) (quoting <u>S & R Corp. v. Jiffy Lube Int'l, Inc.</u>, 968 F.2d 371, 374 (3d Cir. 1992)).

## IV. CONCLUSIONS OF LAW

Plaintiff moves to enjoin Defendant on three counts. First, in Count I of the Verified Complaint, Plaintiff alleges a false designation of origin claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (Doc. No. 1 ¶¶ 33-40.) Second, in Count II, Plaintiff claims that Defendant's use of the mark "KOP Dental Care" amounts to trademark infringement and unfair competition under Pennsylvania common law. (<u>Id.</u> ¶¶ 41-45.) Finally, in Count III, Plaintiff alleges that Defendant's actions constitute unfair competition under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(4). (<u>Id.</u> ¶¶ 46-51.)

To successfully enjoin Defendant at this stage of the proceedings, Plaintiff must first show a likelihood of success on the merits of its claims, which center on trademark infringement and unfair competition under three separate laws. The Pennsylvania common law causes of action are unfair competition and trademark infringement, and they are identical to claims brought under the Lanham Act, without the federal requirement of interstate commerce. <u>R.J. Ants, Inc. v. Marinelli Enterprises, LLC</u>, 771 F. Supp. 2d 475, 487 (E.D. Pa. 2011) (citing <u>Moore Push-Pin Co. v. Moore Business Forms, Inc.</u>, 678 F. Supp. 113, 116 (E.D. Pa. 1987)). Claims for trademark infringement under the Lanham Act and Pennsylvania common law are analyzed under the same standard. <u>Id.</u> at 489. And because trademark infringement claims brought under Section 43(a) of the Lanham Act and those brought under the UTPCPL are so similar, the same legal standards apply. <u>Douglas v. Osteen</u>, 560 F. Supp. 2d 362, 370 (E.D. Pa. 2008) (citing <u>Nor-Am Chem. Co. v. O.M. Scott & Sons Co.</u>, No. 86-3810, 1987 WL 13742, at *2 (E.D. Pa. July 15, 1987)); <u>see also</u> <u>Gabriel v. O'Hara</u>, 534 A.2d 488 (Pa. Super. Ct. 1987) (stating that UTPCPL's unfair or deceptive acts or

practices provisions in 73 P.S. § 201-2(4) are based on the Lanham Act). Thus, the Court will analyze whether Plaintiff is likely to succeed on the merits of these three claims under the Lanham Act.

### A.     Plaintiff Cannot Show a Likelihood of Success on the Merits on its False Designation of Origin Claim under Section 43(a) of the Lanham Act

As noted above, the first step in analyzing a motion for a preliminary injunction is to consider whether the party seeking relief is likely to succeed on the merits of the claim, which, in this case, is brought under the Lanham Act. "The Lanham Act defines trademark infringement as use of a mark so similar to that of a prior user as to be 'likely to cause confusion, or to cause mistake, or to deceive.'" Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., Inc., 793 F.3d 313, 321 (3d Cir. 2015) (quoting 15 U.S.C. § 1114(1)(a)). A "service mark" is "any word, name, symbol, or device, or any combination thereof" that is "used by a person" to "identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127.

As noted above, Defendant does not seek to use the mark KOP Dental; rather, it only seeks to use the mark KOP Dental Care. (Doc No. 13 at 3-4.) For its part, Plaintiff argues that the mark KOP Dental Care is too similar to KOP Dental, a name that individuals in King of Prussia associate with Plaintiff. (Doc. No. 12.) Because Plaintiff had not registered the service mark KOP Dental with the United States Patent and Trademark Office prior to the start of this litigation, Plaintiff's claim falls under Section 43(a) of the Lanham Act, which protects unregistered service marks. (Doc. No. 1.) In relevant part, Section 43(a) provides the following:

(a) Civil action

(1)     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation

of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). Thus, this section creates two bases of liability: false designation of origin,[6] under Section 1125(a)(1)(A); and false advertising, under Section 1125(a)(1)(B). See Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118, 122 (2014).

Here, Plaintiff brings a false designation of origin claim[7]—that is, it argues that Defendant's use of the service mark KOP Dental Care is likely to cause confusion about the origin of its services. (Doc. Nos. 1, 2, 12.) To establish a false designation of origin claim under Section

---

[6] Claims made under Section 1125(a)(1)(A) are called either "false designation of origin" or "false association" claims. See Parks LLC v. Tyson Foods, Inc., 863 F.3d 220, 226 (3d Cir. 2017). The Court will use the former term here.

[7] In Count I of the Verified Complaint, Plaintiff alleges that "Defendant's . . . acts constitute federal unfair competition in the form of passing off, false representation, false advertising, and false designation of origin." (Doc. No. 1 ¶ 38.) However, in Plaintiff's Memoranda in support of its Motion for a Preliminary Injunction, it only asserts a false designation of origin claim; it does not advance arguments on a false advertising claim. (See Doc. No. 12.) The Third Circuit Court of Appeals recently explained that false advertising claims often masquerade as false designation of origin claims. "False advertising claims do not require proof of secondary meaning, so litigants may be tempted to frame a false association claim as a false advertising claim, to ease their evidentiary burden." Parks LLC v. Tyson Foods, Inc., 863 F.3d 220, 226 (3d Cir. 2017). Here, even if Plaintiff advanced arguments in support of a false advertising claim, such a claim would lack merit. Any false advertising claim under this set of facts would fail because "it [would be] essentially a false [designation of origin] claim in disguise." Parks, 863 F.3d at 226.

43(a) of the Lanham Act, a plaintiff must show that (1) it owns a valid and legally protectable service mark, and (2) "the defendant's use of the mark to identify goods or services causes a likelihood of confusion." Alliance Bank, 742 F. Supp. 2d at 545 (quoting A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000)).

The first element of a false designation of origin claim requires a plaintiff to show that it owns a valid and legally protected service mark. AFL Philadelphia LLC v. Krause, 639 F. Supp. 2d 512, 525 (E.D. Pa. 2009). An unregistered mark, like the one here, may be valid and protectable if it "has become distinctive of the applicant's goods in commerce." Id. at 526 (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992)). "An identifying mark is distinctive if: (1) it is inherently distinctive, or (2) it has acquired distinctiveness through secondary meaning." Id.

Here, Plaintiff's service mark—KOP Dental—it not inherently distinctive. As a general rule, geographical marks like King of Prussia or KOP are primarily descriptive and "no one is entitled to exclusively use a common geographic term." Delaware Valley Financial Group, Inc. v. Principal Life Ins., Co., 640 F. Supp. 2d 603, 618-19 (E.D. Pa. 2009) (citing American International Group, Inc. v. American International Airways, Inc., 726 F. Supp. 1470, 1477 n.3 (E.D. Pa. 1989); see also Allegheny Coupling Co. v. Betts Industries, Inc., No. 06-76, 2010 WL 1068199, at *4 (W.D. Pa. Mar. 18, 2010) (finding that "Allegheny," as a geographic term, was not inherently distinctive). Further, "dental" is a generic descriptive term used to characterize the service that Defendant provides; by itself, it is not inherently distinctive. As a result, Plaintiff can only demonstrate that KOP Dental is a valid and legally protectable service mark if it can establish that KOP Dental has acquired secondary meaning.

The term "secondary meaning" refers to a new and additional meaning that attaches to a word or symbol that is not inherently distinctive. The Third Circuit has explained the term in the following way:

> Secondary meaning exists when the trademark is interpreted by the consuming public to be not only an identification of the product, but also a representation of the product's origin. Secondary meaning is generally established through extensive advertising which creates in the mind of consumers an association between different products bearing the same mark. This association suggests that the products originate from a single source. Once a trademark which could not otherwise have exclusive appropriation achieves secondary meaning, competitors can be prevented from using a similar mark. The purpose of this rule is to minimize confusion of the public as to the origin of the product and to avoid diversion of customers misled by a similar mark.

E.T. Browne Drug Co. v. Cococare Products, Inc., 538 F.3d 185, 199 (3d Cir. 2008) (quoting Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1228 (3d Cir. 1978)). Courts in this Circuit use the following list of non-exhaustive factors when evaluating whether secondary meaning has been established:

> (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and (11) actual confusion.

Id. (citing Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 292 (3d Cir. 1991)). "A plaintiff must establish secondary meaning in a mark at the time and place that the defendant began use of the mark." Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000). In general, the more descriptive a term, the greater the evidentiary burden to establish secondary meaning. Id. at 440-41 (citing J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 15:4 (4th ed. 1997)).

In E.T. Browne, the plaintiff, who manufactured products with cocoa butter, hoped to trademark the generic, descriptive phrase "Cocoa Butter Formula" by demonstrating secondary

meaning. 538 F.3d at 189. At the summary judgment stage, however, the court held in favor of the defendant because the plaintiff had failed to produce sufficient evidence of secondary meaning. There, the plaintiff produced evidence of its use and promotion of the phrase for twenty years; substantial amounts of money used to promote the phrase; and the competitors' attempts to copy the phrase. Still, the court ruled against the plaintiff, explaining as follows:

> The evidence's core deficiency is that while it shows Browne used the term "Cocoa Butter Formula" on many occasions over a long period of time, it does not show Browne succeeded in creating secondary meaning in the minds of customers. Although the evidence leaves no doubt that Browne hoped the term would acquire secondary meaning, nothing shows that it achieved this goal.

Id. at 199. The court noted that the lack of customer testimony or surveys was significant. Although not required, this type of evidence typically constitutes the most persuasive evidence of secondary meaning. Id. at 200-01.

In a case similar to this case, the court granted summary judgment in favor of a defendant where the plaintiff failed to produce sufficient evidence that the service mark had acquired secondary meaning. Allegheny Coupling Co. v. Betts Industries, Inc., No. 06-76, 2010 WL 1068199, at *4 (W.D. Pa. Mar. 18, 2010). In Allegheny Coupling, the plaintiff sought trademark protection for the generic, descriptive mark, "Allegheny Coupling," after a competitor opened a business under the name "Allegheny Valve." Id. at *1. There, the court found that the plaintiff had not produced sufficient evidence of secondary meaning; instead, it only proffered conclusory statements from the plaintiff itself that the company had "exclusively and continuously used the name" Allegheny Coupling, and that it had long been "engaged in extensive advertising and sale of its trademarked products" using the name Allegheny Coupling. Id. Significantly, the court found it fatal that "Plaintiff has provided no direct evidence in the form of customer surveys, specific marketing campaigns or sales figures utilizing the mark, revenue growth accompanied by

advertising, or anything else capable of supporting the reasonable inference that the descriptive phrase, 'Allegheny Coupling' has acquired secondary meaning." Id. at *7.

Applying the eleven secondary meaning factors to the case at hand, the Court is not persuaded that Plaintiff has provided sufficient evidence that the mark "KOP Dental" has acquired secondary meaning.  Turning to the first factor, Plaintiff does not use the mark KOP Dental in any of its print advertising.  Nor does Plaintiff use the mark in any of the materials it distributes to patients or consumers—i.e., pens, frisbees, calendars, or card holders.  All of those materials bear the name King of Prussia Dental Associates or the name King of Prussia Dental.  Further, although Plaintiff claims that it spends over $100,000 per year on advertising, the record does not reveal how much, if any, of this budget goes to advertising the term KOP Dental, instead of the term King of Prussia Dental Associates or King of Prussia Dental.  See AcademyOne, Inc. v. CollegeSource, Inc., No. 08-5707, 2009 WL 5184491, at *11 (E.D. Pa. Dec. 21, 2009) (granting judgment in favor of the defendant and finding it relevant that "the record does not reveal how much of this advertising and marketing . . . was actually specific to [plaintiff's mark], such that it was likely to lead to buyer association between [plaintiff's mark] and the services that it provides"), aff'd CollegeSource, Inc. v. AcademyOne, Inc., 597 Fed. App'x 116 (3d Cir. 2015).

Plaintiff claims that its online presence heavily promotes the mark KOP Dental.  And to be sure, Plaintiff's Facebook, Twitter, Google Plus, and Tumblr accounts are all registered under the name KOP Dental.  Additionally, Plaintiff maintains an internet domain name at www.KOPDental.com and its employee emails end with "@KOPDental.com."  However, there is little evidence that Plaintiff consistently uses the mark KOP Dental or the hashtag #KOPDental in its posts or on its website.  At the preliminary hearing, Plaintiff offered a handful of tweets that use #KOPDental, but did not produce evidence that it uses the mark on any of its other social media

accounts.  Nor is the mark used on Plaintiff's website.  Further, the handful of tweets were written in the past few months—after Defendant erected its sign on West Dekalb Pike.  As noted above, Ms. Blefeld testified that "thousands" of consumers view Plaintiff's Facebook posts.  However, beyond her testimony, there is not evidence of this claim.  Notably, "[t]he testimony of the trademark user's employees as to secondary meaning is often given little weight as a mere conclusion colored by possible bias.  Conclusory testimony by employees as to the probable mental reactions of buyers is often merely self-serving evidence given to satisfy the employer."  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 15:40 (5th ed. West 2019).

With regard to the second factor, length of use, Ms. Blefeld testified that patients have referred to Plaintiff as KOP Dental since it first opened its doors in 1985.  However, Plaintiff has not submitted any evidence by way of patient testimony to substantiate this testimony.  Additionally, Ms. Blefeld testified that Plaintiff has used the mark KOP Dental on its social media accounts since 2015.  But again, Plaintiff has offered little evidence to support this claim.  As noted above, Plaintiff produced a handful of tweets that state #KOPDental, but these tweets were all posted within the past few months.  Plaintiff has not produced any evidence about the use of the mark on its other social media accounts.

The third factor—exclusivity of use—favors Plaintiff.  There is no evidence that any other business in Southeastern Pennsylvania uses the mark KOP Dental.  Turning to the fourth factor, the fact of copying, there is no evidence that Defendant intended to infringe on Plaintiff's service mark or appropriate its goodwill in the community.  At the hearing, Dr. Cho testified that Defendant investigated other dental practices in King of Prussia, but did not discover any practices that used the mark KOP Dental Care.  (Doc. No. 11 at 42:20-43:15.)  He further testified that Defendant desires to use the mark KOP Dental Care because (1) the use of the name KOP would advertise to

consumers where the practice is located, and (2) Defendant owns several other dental practices, all of which contain the name of the town in which they are located, and end in "Dental Care." (Doc. No. 13 at 22.) Additionally, Dr. Cho testified at the hearing that if any patients arrived at Defendant's practice, but were actually seeking Plaintiff's practice, Defendant would "redirect" them to the correct practice. (Doc. No. 11 at 43:15-44:3.) This testimony further supports the notion that Defendant does not intend to appropriate Plaintiff's goodwill in the King of Prussia community.

Next, the Court turns to the fifth and sixth factors—customer surveys and customer testimony, respectively. When evaluating secondary meaning, courts place particular emphasis on these factors; although customer surveys and testimony are not dispositive, they are the only direct evidence of secondary meaning. See Allegheny Coupling, 2010 WL 1068199, at *6. There is no evidence of customer surveys in this case, in part because this litigation only commenced one month ago. Plaintiff did, however, produce a single customer review that used the term KOP Dental. This review, which Ms. Blefeld testified about at the hearing, reads as follows:

> I've been going to KOP dental for the past 15 years. I can honestly say I've never had one bad experience from checkups, cleanings, night guards and cosmetic. I've had my teeth cleaned from all of the hygienist [sic] and they are all . . . .

(Hrg. Ex. 4.) This review is the only direct evidence of the fact that a customer refers to Plaintiff as KOP Dental. As noted above, Plaintiff did not call any customers to testify at the hearing to bolster its argument. Ms. Blefeld did testify that "all of our patients refer to us as KOP Dental and they refer people to us and when they talk about us." (Id. at 13:5-14.) But as emphasized above, the testimony of a trademark user's employees regarding secondary meaning is typically afforded little weight because such testimony is generally biased. J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 15:40 (5th ed. West 2019). Consequently, the lack of

evidence of customer surveys and customer testimony weighs against a finding of secondary meaning.

Turning to the remainder of the factors, there is no evidence on the record regarding the use of the mark in trade journals, the size of the company, the number of sales, or the number of customers. Plaintiff does, however, argue that there have been two instances of customer confusion between Defendant's mark and Plaintiff's mark. Indeed, Ms. Blefeld testified that after Defendant erected its sign on West Dekalb Pike, two individuals contacted Plaintiff to ask if it had moved:

| Ms. Blefeld: | . . . And it's troublesome. It's – people were already getting mixed up and calling us when they saw the sign that did we move. |
|---|---|
| Plaintiff's Counsel: | Can you state specifically who it was or what practice raised the question as to whether you would move? |
| Ms. Blefeld: | The oral surgery practice. |
| Plaintiff's Counsel: | And do you know what that what their call was about? |
| Ms. Blefeld: | She just called and said I saw the sign, did you guys move? And we said no. And she said, oh, I was worried for a second. |
| | And so we cleared it up with them, but I had a patient in the next chair from me that also said I thought you may have moved that was talking to the hygienist. And I was working on a patient. We have open rooms, so I could hear their conversation. |

(Id. at 16:20-17:9.) Again, these instances of confusion occurred after individuals saw Defendant's sign on West Dekalb Pike, which read "KOP Dental." Notably, the sign did not read "KOP Dental Care." Thus, the evidence produced by Plaintiff constitutes evidence of actual confusion between the marks KOP Dental and KOP Dental; it does not constitute evidence of actual confusion between the marks KOP Dental and KOP Dental Care.

Still, Plaintiff cites to one more instance of actual confusion. In May, Plaintiff received a package in the mail that meant for Defendant. (Doc. No. 12-1 at 4.) The original address on the package KOP Dental Care, 600 W Dekalb Pike, Ste. 302, King of Prussia, Pennsylvania, PA 19406—the site of Defendant's new offices. (Id.) However, the postal service determined that the package had been sent to a "bad address," and instead sent the package to a "corrected address"— KOP Dental Care, 491 Allendale Road, Ste 306, King of Prussia, PA 19406. (Id.) As noted previously, this address is the location of Plaintiff's dental practice. But this confusion by the postal service, which can be readily corrected, is not a substitute for customer testimony or customer surveys.

Having analyzed these eleven factors, the Court is not persuaded at this point in the litigation that Plaintiff's mark, KOP Dental, has acquired secondary meaning in the market. Like the plaintiffs in E.T. Browne and Allegheny Coupling, it is evident that Plaintiff has attempted to create secondary meaning in the minds of patients and consumers in King of Prussia—indeed, it uses the domain name www.KOPDental.com and its employees end with @KOPDental.com. But fatally, Plaintiff has produced insufficient evidence to support the notion that its efforts have been successful. Instead, it only produced Ms. Blefeld's conclusory, unsubstantiated testimony that patients refer to Plaintiff as KOP Dental, and the single patient review that refers to Plaintiff as KOP Dental. Without more, Plaintiff has not demonstrated secondary meaning at this stage in the proceedings.[8]

Because the Court has found that Plaintiff has failed to establish at this time that KOP Dental has acquired secondary meaning, it is not necessary to analyze the likelihood of confusion

---

[8]  Importantly, the Court does not foreclose the possibility that Plaintiff will be able to marshal additional evidence to demonstrate secondary meaning at the trial on whether a permanent injunction should be issued.

element of the false designation of origin claim.  For the reasons given here, Plaintiff has not demonstrated that it is likely to succeed on the merits of its claim under the Lanham Act.  And as noted above, claims for trademark infringement and unfair competition brought under the Lanham Act, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and the Pennsylvania common law are analyzed under the same standard.  Thus, because the Court has found that Plaintiff is not likely to succeed on its Lanham Act claim, the Court also finds that Plaintiff is not likely to succeed on its claims for trademark infringement and unfair competition under Pennsylvania's Unfair Trade Practices and Consumer Protection Law or under Pennsylvania common law.

> **B.**      **The Court Need Not Evaluate the Final Three Preliminary Injunction Factors**

As noted above, "[a]ll four factors should favor preliminary relief before the injunction will issue."  Alliance Bank v. New Century Bank, 742 F. Supp. 2d 532, 545 (E.D. Pa. 2010) (quoting S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992)).  Because the Court has concluded that Plaintiff is not likely to succeed on the merits of its trademark infringement and unfair competition claims under the Lanham Act, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and Pennsylvania common law, the Court need not evaluate the final three factors that need to be satisfied in order for a preliminary injunction to issue.

## V.      CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion for a Preliminary Injunction.  An appropriate Order follows.